UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RANDALL ARTIS,<br><br>  Plaintiff,<br><br>  v.<br><br>ADRIAN SANTOS,<br><br>  Defendant. | CAUSE NO.: 2:16-CV-108-TLS |

**OPINION AND ORDER**

The matter is before the Court on the Plaintiff Randall Artis' Rule 59(a) & (e) Motion [ECF No 156][1] and Rule 50(b) Motion [ECF No. 158]. These motions ask the Court to overturn the jury's verdict against the Plaintiff and enter judgment in his favor or, alternatively, to grant the Plaintiff a new trial. The Defendant Adrian Santos filed responses [ECF Nos. 161, 162] opposing both motions. The Plaintiff did not file replies, and the time to do so has passed. For the reasons set forth below, the Plaintiff's motions are DENIED.

**BACKGROUND**

On March 28, 2016, the Plaintiff filed this case against Adrian Santos and the City of East Chicago after his employment in the Clerk's Office was terminated. ECF No. 1. After years of discovery and motions, this case whittled down to a single claim for trial, which asserted that the Defendant violated 42 U.S.C. § 1983 by retaliating against the Plaintiff for exercising his First Amendment rights. *See* Pre-Trial Order 3, 4–5, ECF No. 96.

Beginning on May 23, 2022, the Court held a seven-day jury trial. *See* ECF Nos. 138–42, 146, 148. At trial, the Plaintiff attempted to prove that the Defendant terminated the Plaintiff's

---

[1] The Plaintiff filed a Supplement to Plaintiff' Rule 50(b) Motion [ECF No. 160], explaining that docket entry 156 is mistakenly titled as the memorandum rather than the motion.

employment because he refused to campaign on behalf of Commissioner Michael Repay and Judge Marissa McDermott. For the Defendant, he claimed to have terminated the Plaintiff's employment due to the Plaintiff's prior felony conviction for stealing funds from the City and the risks associated with the Plaintiff's continued employment. Both parties moved for judgment as a matter of law, and the Court took those motions under advisement. Ultimately, the jury returned a verdict in favor of the Defendant. ECF No. 153.

The Plaintiff filed the instant motions and supporting briefs on June 24, 2022. *See* ECF Nos. 156–59. First, the Plaintiff's Rule 50(b) Motion [ECF No. 158] requests that the Court vacate the jury's verdict and enter judgment as a matter of law in his favor, arguing that no reasonable jury could have found for the Defendant. Alternatively, the Plaintiff's Rule 59(a) & (e) Motion [ECF No. 156] requests a new trial and an amended judgment based on the following: (1) the Court erred by allowing expert witness Roosevelt Haywood to testify; (2) the Court erred by not striking a juror for cause; (3) the Court provided an erroneous jury instruction and verdict form; (4) the Court erred by excluding certain testimony about the parties' relationship; (5) the Court erred by excluding testimony from Judge Sonya Morris; and (6) the jury's verdict was against the weight of the evidence.[2] The Court addresses these motions in turn.

## ANALYSIS

**A.     The Plaintiff's Rule 50(b) Motion**

The Plaintiff's Rule 50(b) motion seeks judgment as a matter of law based on the evidence presented at trial. Before a case is submitted to the jury, Federal Rule of Civil Procedure 50(a) "allows a district court to enter judgment against a party who has been fully

---

[2] The Plaintiff did not obtain a copy of the trial transcript for use in preparation of his motions. *See* Pl. Rule 59 Br. 4, ECF No. 157. Therefore, as the Plaintiff notes in his brief, his arguments are based on his recollection of the events at trial. *Id.*

heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011) (quoting Fed. R. Civ. P. 50(a)). If a court does not grant the initial Rule 50(a) motion, it "is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Then, on a renewed motion, "the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

"In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence." *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012). The court does not make credibility determinations, nor will it reweigh the evidence. *Schandelmeier-Bartels*, 634 F.3d at 376. Likewise, it does not ask "whether the jury believed the right people," but only whether there was sufficient evidence for the jury to reach its verdict. *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000). A verdict will only be overturned if no rational jury could have found for the prevailing party. *Tate v. Exec. Mgmt. Servs., Inc.*, 546 F.3d 528, 532 (7th Cir. 2008).

At the outset, the Defendant argues that the Plaintiff waived his Rule 50(b) arguments because they were not the same grounds as his oral Rule 50(a) motion at trial. It is true that a Rule 50(b) motion can only be granted on grounds presented in the preverdict motion. *See Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426, 439 (7th Cir. 2021). However, the Plaintiff's motions raised essentially the same argument that he proved the elements of his claim and there was insufficient evidence supporting a verdict in the Defendant's favor. The Plaintiff's instant motion can therefore be considered on the merits.

Turning there now, the Plaintiff asserted at trial that the Defendant fired him for political reasons in violation of the First Amendment. To prevail on such a claim, the Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [Defendant's] decision to take the retaliatory action." *McGreal v. Village of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015)). However, the Defendant can rebut the causation element "by offering an alternative explanation for the firing" and showing that the Plaintiff would have been fired regardless of the protected activity. *Id.* at 313 (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012)).

This case boiled down to the causation element, specifically whether the Plaintiff's refusal to campaign for Judge McDermott and Commissioner Repay was a motivating factor for the termination of his employment or whether he was fired for some non-political reason. On this issue, the Defendant presented sufficient evidence showing that the Plaintiff was fired for his previous felony conviction as opposed to his political conduct.

During trial, the Defendant explained that when he started as City Clerk, his goals were to elevate the standards and perception of the Clerk's Office and to implement various risk protections. Evidence showed that the Defendant asked his attorney John Cantrell to conduct background checks on his employees, which uncovered the Plaintiff's felony conviction for stealing over $1 million in funds from the City. Tom Dabertin, an HR consultant, and Randy Vale, an insurance representative, both testified about early discussions they had with the Defendant regarding the possibility of bonding Clerk's Office employees. The Defendant presented further evidence that he had concerns over whether the City's insurance policy might

exclude coverage under the crime policy provision should the Plaintiff have stolen from the City while he was an employee. Finally, the termination letters sent to the Plaintiff explain that he was being fired because of his felony conviction and the inability to bond him. *See* Pl. Trial Exs. 1, 2, ECF No. 149; *see also* ECF No. 48-13. The Defendant reaffirmed the gist of these letters by testifying that the Plaintiff was fired because of his prior felony conviction. Based on this evidence, a reasonable jury could conclude that the Defendant fired the Plaintiff because of his prior felony conviction. *See Thomas v. Anderson*, 912 F.3d 971, 975–76 (7th Cir. 2018) (noting that a reasonable jury could have relied on a nonmoving party's testimony).

Moreover, the Defendant presented evidence to rebut the claim that a factor motivating the firing was the Plaintiff's refusal to campaign on behalf of Judge McDermott and Commissioner Repay. The Defendant did this, in part, through the testimony of Judge McDermott, Mayor Thomas McDermott, Kevin Smith (Judge McDermott's campaign manager), and Commissioner Repay. While the campaigns may have wanted support from individuals in the community, those witnesses testified that they were not specifically asking the Defendant to help them solicit the Plaintiff's campaign assistance. Since the campaigns were not meaningfully considering whether the Plaintiff would provide campaign assistance, it would be reasonable to infer that his refusal to help was not a motivating factor for his termination. *See Cloutier*, 996 F.3d at 442 (drawing "all justifiable inferences" in favor of the non-moving party). Therefore, this evidence would also support a decision against the Plaintiff on the causation element.

The Plaintiff's brief largely focuses on challenging the Defendant's evidence and arguing that the Defendant's reason for firing the Plaintiff was a pretext for an improper political motive. Among other things, he claims to have impeached the Defendant's testimony, identified inconsistencies regarding efforts to bond Clerk's Office employees and the timeline of certain

events, and undermined the legitimacy of the background checks. But for purposes of a Rule 50(b) motion, these arguments are unavailing. The Court "construes the evidence strictly in favor of the party who prevailed before the jury," *Passananti*, 689 F.3d at 659, and most of the witnesses at trial provided testimony supporting (to some degree) the Defendant's case. Just because the Plaintiff might have identified inconsistencies in the Defendant's evidence does not mean the Plaintiff's view of the case is automatically credited as true. That would flip the standard of review on its head. Ultimately, the jury did not believe the Plaintiff's version of events, and, given the evidence presented on the causation element, the Court concludes that the jury's verdict was adequately supported.

Accordingly, the Court denies the Plaintiff's Rule 50(b) Motion [ECF No. 158].

**B.     The Plaintiff's Rule 59 Motion**

Turning to the Plaintiff's next motion, he identifies six errors that he argues require a new trial under Rule 59(a) and an amended judgment under Rule 59(e). Federal Rule of Civil Procedure 59(a) provides that, after a jury trial, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014).

Alternatively, a motion brought under Rule 59(e) requires the movant to "demonstrate a manifest error of law or fact or present newly discovered evidence." *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011). Altering or amending a judgment after its entry is extraordinary relief that is "reserved for the exceptional case." *Childress v. Walker*, 787 F.3d 433, 442 (7th Cir. 2015) (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)). A Rule 59(e) motion is not

a way "for a party to undo its own procedural failures," nor does it "allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010) (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). Similarly, it does not present an opportunity to "'rehash' previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). Instead, Rule 59(e) allows a court to correct a "manifest error," which means a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (quoting *Oto*, 224 F.3d at 606).

1.   Roosevelt Haywood's Expert Testimony

First, the Plaintiff argues that the Defendant's insurance expert, Roosevelt Haywood, should have been barred from testifying at trial. *See* Pl. Rule 59 Br. 5–9, ECF No. 157. The Plaintiff previously sought to bar Mr. Haywood's testimony in a pretrial motion. *See* ECF No. 83. However, the Court denied the Plaintiff's motion during the January 29, 2021 ruling conference, concluding that Mr. Haywood qualified as an expert in insurance risk and could testify on that issue at trial. *See* Hr'g Tr. 4:14–7:4, ECF No. 111. In the instant motion, the Plaintiff again argues that Mr. Haywood's testimony should have been excluded under *Daubert* and Federal Rule of Evidence 702.

The Court rejects this argument and stands by its earlier decision. As mentioned, Rule 59 does not offer an opportunity to relitigate the same arguments that a party has previously raised. *See Vesely*, 762 F.3d at 666 (stating that a Rule 59(e) motion is not meant to rehash previously rejected arguments); *BKCAP, LLC v. Captec Franchise Tr. 2000-1*, No. 3:07-cv-637, 2011 WL 4916590, at *12 (N.D. Ind. Oct. 14, 2011) (stating that rehashed arguments do not warrant relief

under Rule 59(a)); *SEC v. Koenig*, No. 02 C 2180, 2007 WL 1074901, at *7 (N.D. Ill. Apr. 5, 2007) (explaining that a Rule 59(a) motion is not "a vehicle for parties to relitigate issues"). The Plaintiff's brief offers no additional insight as to why Mr. Haywood's testimony should have been excluded; instead, he appears to have mostly copied and pasted his earlier motion to exclude. The only difference seems to be bare claims that he was prejudiced by the testimony and a nonspecific reference to a sidebar regarding whether matters were properly disclosed.

Moreover, since this is an evidentiary issue, the Plaintiff must show that any error had "a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice." *Burton v. E.I. du Pont de Nemours & Co.*, 994 F.3d 791, 812 (7th Cir. 2021) (citation omitted); *see Patterson v. Baker*, 990 F.3d 1082, 1086 (7th Cir. 2021). Except for merely claiming to have been prejudiced, the Plaintiff offers no tailored discussion of how Mr. Haywood's testimony factored into the evidence at trial or how the jury might have received his testimony. And, from the Court's perspective, the Plaintiff undertook a vigorous cross-examination of Mr. Haywood, which allowed him to argue to the jury that Mr. Haywood's testimony was unreliable. *Cf. Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579, 596 (1993) (stating that "vigorous cross-examination" is an "appropriate means of attacking shaky but admissible evidence"). Thus, the Court's decision regarding Mr. Haywood's testimony does not require a new trial.

2.  *Jury Selection*

Second, the Plaintiff argues that the Court erred by not striking a juror for cause, claiming that the juror demonstrated problematic racial attitudes. *See* Pl. Rule 59 Br. 9–10. The Plaintiff's concern relates to a comment one of the juror's included in her answers to the jury questionnaire. In response to a question asking for additional comments, the juror wrote, "I don't agree with the

8

thinking that too many black males are targeted or treated injustly [sic] because of their color, particularly if the geographical area is primarily black." During the voir dire process, the Plaintiff sought to strike the juror for cause, arguing that her comment was racist and that she would be prejudiced against the Plaintiff because he was African American. The Court allowed the Plaintiff's counsel to ask the juror additional questions in order to assess potential biases. During the follow-up questioning, the Court was assured that the juror could set aside her opinions and decide the case solely on the evidence presented. The Court also suggested that the juror's answers mirrored views held by other jurors, who, notably, the Plaintiff did not seek to strike. As a result, the Court declined to strike the juror for cause and she was seated on the jury.

A fair trial requires an impartial jury that is "capable and willing to decide the case solely on the evidence before it." *Marshall v. City of Chicago*, 762 F.3d 573, 575 (7th Cir. 2014). During the voir dire process, if a prospective juror's responses to questions "reveal a bias so strongly as to convince the judge that the juror cannot render impartial jury service," that juror should be dismissed for cause. *Id.*; *see Thompson v. Altheimer & Gray*, 248 F.3d 621, 625 (7th Cir. 2001) (explaining that a prior belief is "a bias only if it were irrational or unshakable, so that the prospective juror 'would be *unable* to faithfully and impartially apply the law'" (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985))). However, a juror can be properly seated if she gives "final, unequivocal assurances, deemed credible by the judge, that for purposes of deciding the case, she can set aside any opinion [she] might hold, relinquish her prior beliefs, or lay aside her biases or her prejudicial personal experiences." *United States v. Taylor*, 777 F.3d 434, 441 (7th Cir. 2015) (quoting *United States v. Allen*, 605 F.3d 461, 464–65 (7th Cir. 2010)).

Here, the Court is satisfied that the Plaintiff received an impartial jury. Again, the Court considered and rejected the claims of bias at trial, and the Plaintiff merely relitigates these

arguments in his brief. Although the juror's comment may have warranted additional inquiry during voir dire—which the Court allowed—her answers to the Plaintiff's questioning did not demonstrate any strong bias that could not be set aside in deciding the First Amendment retaliation claim. Instead, the juror confirmed that she would render a fair and impartial verdict based on the evidence in the case.

In his brief, the Plaintiff provides additional caselaw for the Court's review, but those cases are unpersuasive. Both *Ristaino v. Ross* and *Ham v. South Carolina* dealt with a court's obligation, under certain circumstances, to ask questions specifically directed to racial prejudice. *See Ristaino*, 424 U.S. 589, 590 (1976); *Ham*, 409 U.S. 524, 526–27 (1973). The Plaintiff had that opportunity here, and none of the juror's answers revealed a strong or unshakable bias. The remaining cases describe circumstances of impartiality and prejudice far different from what occurred in this case. *See Turner v. Louisiana*, 379 U.S. 466, 473–74 (1965) (describing a situation where the jury was placed in the charge of two sheriff's deputies who were key witnesses for the prosecution); *Irvin v. Dowd*, 366 U.S. 717, 728 (1961) (noting that two-thirds of the jurors had an opinion that the defendant was guilty and were previously familiar with the facts, some of whom said that evidence was needed to overcome their belief); *Avery v. Georgia*, 345 U.S. 559, 562 (1953) (concluding there was a prima facie case of discrimination for a jury selection process that used different ticket colors to identify a juror's race and that yielded no African-American jurors). The Court's denial of the Plaintiff's request to strike a juror for cause does not warrant relief under Rule 59.

3.   *Jury Instruction No. 23 and Verdict Form B*

Third, the Plaintiff contends that the Court erred in its jury instruction on the elements of the claim and in one of the verdict forms. *See* Pl. Rule 59 Br. 10–11. He argues that they were

confusing and misleading to the jury and require a new trial. The Plaintiff's argument focuses on the Court's Instruction No. 23, specifically the part stating:

> To succeed on this claim, Plaintiff must prove each of the following five things by a preponderance of the evidence:
>
> . . .
>
> 3. Defendant's belief that Plaintiff refused to campaign for Michael Repay and Marissa McDermott was a reason that Defendant terminated Plaintiff's employment. It need not be the only reason.

Instruction No. 23, ECF No. 151. Relatedly, he argues that the following interrogatory on Verdict Form B was also confusing and misleading:

> We, the jury, unanimously find the following by a preponderance of the evidence: (Place an "x" on the appropriate lines.)
>
> . . .
>
> 3. Was Defendant's belief that Plaintiff refused to campaign for Michael Repay and Marissa McDermott a reason that Defendant terminated Plaintiff's employment?
> YES: \_\_\_\_  NO: \_\_\_\_

Verdict Form B, ECF No. 151.

In order to obtain a new trial for an incorrect jury instruction, the Plaintiff must show that "(1) the instruction inadequately states Seventh Circuit law; and (2) the error likely confused or misled the jury *causing prejudice to the* [*Plaintiff*]." *O'Donnell v. Caine Weiner Co.*, 935 F.3d 549, 552 (7th Cir. 2019). When evaluating prejudice, the Court first considers all the instructions, evidence, and arguments advanced by the parties. *Lange v. City of Oconto*, 28 F.4th 825, 840 (7th Cir. 2022) (citation omitted). Then, the Court asks "whether the correct message [was conveyed] to the jury reasonably well, such that the erroneous instruction likely made no difference in the outcome." *Id.* (internal quotation marks and citation omitted). As for the verdict form, "case law requires only that the verdict form not be confusing or misleading to the jury." *EEOC v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012). The Court views

11

the verdict form in light of the jury instructions and decides whether the jury understood "the issues and its duty to determine those issues." *Id.*

Beginning with the jury instruction, the Court concludes that it properly stated Seventh Circuit law and did not unduly confuse or mislead the jurors. Instruction No. 23 was adopted from the Seventh Circuit Pattern Jury Instructions and modified to reflect the contentions in this case. *See* Federal Civil Jury Instructions of the Seventh Circuit 6.01 (2017); *see also United States v. Edwards*, 869 F.3d 490, 496–97 (7th Cir. 2017) (explaining that pattern instructions are not authoritative but provide a helpful starting point and "reflect the collective experience of the judges and lawyers who crafted them"). While it is not clear that the Plaintiff even disputes the legal accuracy of the instruction, it is worth mentioning that the instruction provided is consistent with how the Seventh Circuit lays out the elements of a First Amendment retaliation claim. *See, e.g.*, *McGreal*, 850 F.3d at 312–13.[3] The only argument the Plaintiff seems to advance in his brief (as well as raised at trial) is that the third element of the instruction was confusing. However, the Plaintiff has not specifically explained why the language is confusing or offered an effective alternative. His proposed instruction essentially dropped all of the elements required of his claim and would have left the jury unsure as to what needed to be proved. *See* Pl. Mot. on Jury Instructions 2–3, ECF No. 147.[4] Thus, the Court concludes that Instruction No. 23 was properly given and would not have confused the jurors.

---

[3] Although caselaw generally uses the phrase "at least a motivating factor" to describe the causation element, *see McGreal*, 850 F.3d at 312–13, the pattern instruction requires that the protected conduct be "a reason" for the termination, though "[i]t need not be the only reason," Federal Civil Jury Instructions of the Seventh Circuit 6.01(3). The committee that drafted the pattern instructions explained that it used this language to simplify the instruction. *See id.*, Committee Comment (c) ("In drafting the instruction, to simplify, the Committee chose not use the words 'substantial or motivating,' instead asking the jury to consider whether the Plaintiff's protected conduct 'was a reason, alone or with other reasons' for the defendant's conduct.").

[4] The Court also notes that the Plaintiff's original Proposed Jury Instructions included a similar refrain to the one adopted by the Court. *See* Pl. Proposed Jury Instructions 12, ECF No. 101 ("3. Adrian Santos'

Similarly, the Plaintiff's argument regarding Verdict Form B—specifically, the third question—does not warrant a new trial. The Plaintiff again claims that it was confusing and prejudicial but does not identify any specific error with the verdict form. Verdict Form B simply adopts the elements listed in Instruction No. 23 and rephrases them into YES/NO questions. As just discussed, those elements accurately state the law and were not confusing. It may be that the Plaintiff was concerned with the Court's use of a "special" as opposed to a "general" verdict form, but that decision is left to the Court's discretion. *See Mgmt. Hospitality*, 666 F.3d at 439. Here, the Court determined that using a special verdict form for Verdict Form B would assist the jury by focusing their attention on the specific elements of the claim and the contentions at issue. Especially when read in connection with Instruction No. 23 and Verdict Form A, the jury would not have been confused by the language used.

4.     *Defendant's Motion in Limine No. 3*

Fourth, the Plaintiff argues that the Court erred in granting the Defendant's Motion in Limine No. 3, which sought to exclude certain evidence about political agreements and the Plaintiff campaigning on behalf of the Defendant prior to the relevant time. *See* Pl. Rule 59 Br. 11–13; Def. Mot. in Limine 5–7, ECF No. 97. At the ruling conference, the Court granted the motion, explaining that the evidence would be "unrelated and irrelevant" and that it would "lengthen the course of the trial on three side issue[s] or events that do not seem to relate to the alleged First Amendment violation." Hr'g Tr. 10:4–11:6. However, the Court said it anticipated there would be "some history and context given to the relationship between" the parties so the jury could understand the issues. *See id.* 13:8–14, 14:4–15:5. This dispute reemerged numerous

---

belief that Randall Artis would not campaign for Michael Repay and Marissa McDermott was a reason that Adrian Santos terminated Randall Artis. It need not be the only reason.").

times at trial, which resulted in the Court enforcing the limits of its ruling and the Plaintiff presenting offers of proof.

The Court reaffirms its decision on these same arguments once more. This case was about whether the Defendant, as the City Clerk, fired the Plaintiff for refusing to campaign for Judge McDermott and Commissioner Repay. Based on the offers of proof, it is clear the Plaintiff wanted to go into detail about the agreements and campaigning that occurred before the Defendant became the Clerk and the relevant campaigns began. The Plaintiff also intended to present additional witnesses to exclusively testify on those issues. Therefore, as the Court anticipated, the Plaintiff's evidence on these issues would have unnecessarily lengthened trial. The testimony also created a significant risk of confusing the jury by diverting their attention to agreements and campaigns that were separate from the specific issue that needed to be resolved. Given these problems, the evidence was properly excluded. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ."); *see also* Fed. R. Evid. 401. The Court's decision on the Defendant's Motion in Limine No. 3 does not provide a basis for relief.

5. *Judge Sonya Morris' Testimony*

Fifth, the Plaintiff argues that the Court erred by excluding testimony from Judge Sonya Morris. *See* Pl. Rule 59 Br. 13. As background, the Plaintiff claims that the Defendant told him Judge Morris would not allow the Plaintiff in her courtroom and that this was a reason the Plaintiff was being fired. The Plaintiff wanted Judge Morris to testify so that she could rebut the truth of that reason. However, it is still not clear why Judge Morris' testimony was relevant to the claim at issue—namely, whether the Defendant fired the Plaintiff for his refusal to campaign

for Judge McDermott and Commissioner Repay. Allowing Judge Morris to testify to the jury would have diverted the trial and impeded the jury's ability to resolve the issues in this case. *See* Fed. R. Evid. 403. Thus, the exclusion of her testimony was proper and does not warrant a new trial under Rule 59.

*6.    Sufficiency of the Evidence*

Sixth, the Plaintiff argues that the Defendant did not present sufficient evidence that he fired the Plaintiff for non-political reasons. *See* Pl. Rule 59 Br. 13–19. The argument is nearly identical to the one raised in his Rule 50 Motion; in fact, the Plaintiff says there was "a great deal of copy and paste" across his motions. Pl. Rule 59 Mot. 1 n.1, ECF No. 156. Therefore, for the same reasons described above, the Court concludes that the jury's verdict was not "against the manifest weight of the evidence." *See Venson*, 749 F.3d at 656. The Defendant presented more than enough evidence for the jury to conclude that the Plaintiff was not fired for his protected activity.

\*    \*    \*

Since none of the Plaintiff's arguments warrant relief, the Court denies the Plaintiff's Rule 59(a) & (e) Motion [ECF No. 156].

## CONCLUSION

For the foregoing reasons, the Court DENIES the Plaintiff's Rule 59(a) & (e) Motion [ECF No 156] and the Plaintiff's Rule 50(b) Motion [ECF No. 158].

SO ORDERED on August 25, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT